## Case No. 850.

### BANK OF ALEXANDRIA v. MANDE-VILLE.

[1 Cranch, C. C. 552.] [1]

Circuit Court, District of Columbia. July Term, 1809.

USURY—DISCOUNT—CORPORATIONS — BANK OF ALEXANDRIA.

1. The statute of usury applies to contracts of corporations, as well as to those of natural persons.

2. The Bank of Alexandria may, upon discounting notes, deduct the whole interest for the whole time they have to run.

[See Bank of Alexandria v. Mandeville, Case No. 851; Union Bank of Georgetown v. Gozler, Id. 14,358.]

[1] [Reported by Hon. William Cranch, Chief Judge.]

[At law. Action by the Bank of Alexandria against Joseph Mandeville to recover on a promissory note. Heard on demurrer to the replication. Judgment for plaintiff.]

This cause was argued at the last term by Mr. Youngs and Mr. C. Lee, for the defendant, and Mr. E. J. Lee and Mr. C. Simms, for the plaintiff; and again at this term by the same counsel for the plaintiff, and Mr. Youngs and Mr. Swann, for the defendant.

CRANCH, Circuit Judge, delivered the following opinion. This is an action of debt brought by the Bank of Alexandria against Mandeville, to charge him as the secret partner of R. B. Jamesson, the maker of a promissory note for eight hundred dollars, payable sixty days after date, to the order of W. Herbert, in the Bank of Alexandria.

The defendant pleads,—

1. That on the 26th of May, 1806, it was corruptly agreed between the plaintiff and R. B. Jamesson, that the plaintiff should advance and lend R. B. Jamesson $791.60, and should give day of payment thereof until 60 days from the 26th of May, 1806, and also 3 days of grace thereafter, and that R. B. J. should give his note therefor with W. Herbert, an indorser, for 800 dollars, dated the 26th of May, 1806, payable 60 days after date, which said sum of $8.40 was for the interest and profit therefor, and for giving day of payment of the said 800 dollars for the said 60 days and the said 3 days of grace, which said sum of $8.40 exceeds the rate of 6 dollars for the interest of 100 dollars for one whole year, contrary to the form and effect of the statute in such case made and provided. The plea then avers that the note was so made and indorsed, and the plaintiffs advanced and paid to R. B. J. the sum of $791.60, by which the note, by force of the statute, is void in law, and this he is ready to verify.

2d plea. That on the 26th of May, 1806, it was corruptly agreed, &c., that R. B. J. should draw his note in the declaration mentioned in favor of W. Herbert, who should indorse the same, dated 26th of May, 1806, at 60 days after date, and the plaintiffs would pay him on the 27th of May, 1806, 800 dollars, upon condition that R. B. J. would, on the 27th of May, 1806, pay the plaintiffs the sum of $8.40, as interest upon the $800 for 63 days from the date of the note, which sum of $8.40 was, on the 27th of May, deducted from the $800, and the balance of $791.60 on that day paid to R. B. J., which sum of $8.40, the interest at 6 per cent. on 800 dollars for 63 days, for the loan of $800 for 62 days exceeds the rate, &c.

3d plea. That it was on the 26th of May, 1806, corruptly agreed that the note should be drawn, &c., and that the plaintiffs would discount 800 dollars on account of said note, which should be held for the payment thereof at the expiration of the 60 days and the

3 days of grace, upon the express condition that the interest upon the 800 dollars for the 63 days, amounting to $8.40, should be deducted from the 800 dollars, leaving the sum of $791.60 to be paid to the said R. B. J., which sum of $791.60 was, on the 27th of May, paid to R. B. J. by the plaintiffs. That only the sum of $791.60 was actually loaned to R. B. J., and for the forbearance of the said $791.60 for the 63 days the plaintiffs charged $8.40, which said sum of $8.40, the interest and profit charged for the loan and advance of $791.60 for 63 days, exceeds the rate, &c.

Replication to the 1st plea. Protesting that it was not corruptly agreed, &c., as stated in the plea, that the plaintiff should advance and lend to R. B. J. the sum of $791.60, and should give day of payment, &c., and that R. B. J. did not in pursuance of such supposed corrupt agreement execute the note, &c., to be held by the plaintiffs for the payment of 800 dollars at the expiration of the said 63 days; and that the plaintiffs did not in prosecution of such supposed corrupt agreement, advance and pay, &c. For replication says that R. B. J. offered the note to the plaintiffs, according to the usage and custom of the said bank, indorsed by W. H., to be discounted by the plaintiffs according to the usage, practice, and custom of the said Bank of Alexandria, and all other banking companies. "And the plaintiffs aver that they did not in pursuit of any corrupt agreement, or of any illegal contract, but in pursuance of the legal custom, practice, and usage of the said bank, discount the said note, and did in pursuance thereof pay over to the said R. B. J. the said sum of $791.60, detaining the sum of $8.40 as the discount for the said sum of $800 for 63 days, being at the rate of 6 per cent. per annum, as they might lawfully do; and this they are ready to verify."

To this replication there is a general demurrer, which admits the facts as stated in the replication, if they are well pleaded. The question then is, whether those facts disclose an usurious transaction?

The facts stated in the replication are in substance: That R. B. Jamesson offered his note for 800 dollars, payable in 60 days after date, to W. Herbert's order, and by him indorsed according to the usage of the bank, to the plaintiffs, to be discounted by them according to their usage, and that of all other banks; and that the plaintiffs discounted it according to their usage, by paying to R. B. J. $791.60, and detaining the sum of $8.40 as the discount for the sum of 800 dollars for 63 days, being as they aver at the rate of 6 per cent. per annum. At the time of the first incorporation of the Bank of Alexandria, the Virginia statute of usury had enacted "that no person shall hereafter, upon any contract, take directly or indirectly, for loan of any money, wares, or merchandise, or other commodity, above the value of £5 for the for-

bearance of £100 for a year, and after that rate for a greater or lesser sum, or for a longer or a shorter time; and all bonds, contracts, covenants, conveyances, or assurances hereafter to be made for payment or delivery of any money or goods so to be lent, on which a higher interest is reserved or taken than is hereby allowed, shall be utterly void." The 2d section imposes a penalty on any person who shall take, accept, or receive more than the interest thereby allowed. And by the 3d section, any borrower of money may exhibit a bill in chancery against the lender, and compel him to discover on oath, &c. This was the law in the year 1792, when the Bank of Alexandria was incorporated, and although the interest of money generally was then limited by law to five per cent., the bank was authorized "to receive for discounts made at the bank at a rate not exceeding six per cent. per annum." In May, 1797, the lawful rate of interest was raised by act of assembly to six per cent.

It is contended on the part of the bank that the transaction disclosed by the replication is not usurious, upon two grounds.

1. Because the statute of usury does not affect bodies politic and corporate.

2. Because the use, custom, and practice of all banking companies in discounting bills and notes is to take interest upon the nominal amount of such bills and notes, and not upon the sum actually loaned by way of discount; and the word discount in the charter of the bank is to be explained by reference to such usage, and not to the common arithmetical rule of discount. In support of the first ground, that the statute of usury does not bind bodies politic, it is said that the statute is penal, and must be construed strictly. That the word person must be confined to natural persons, and although the act says that all bonds, &c., shall be void, yet it means all bonds, &c., made by such persons. But the court is not of that opinion. The taking of exorbitant interest by great moneyed institutions and corporations, was an evil as much within the mischief intended to be remedied as if the same should be taken by a natural person; and when by the letter of the law all bonds, &c., are made void, we think it as much within the spirit of the act as within its letter.

The second ground on which the plaintiffs rest the legality of the transaction is more substantial. The question which it raises, is, whether the bank, in discounting this note for $800 for sixty-three days, had a right to retain $8.40 as the discount therefor. If the agreement stated in the replication be such as the bank was authorized by its charter to make, the question of usury cannot arise. The preamble of the charter, (or rather of the act of assembly of Virginia, which incorporated the bank, and which has been decided by the supreme court [in Young v. Bank of Alexandria, 4 Cranch, (8 U. S.) 384] to be a public act,) in enumerating the benefits ex-

pected from the establishment of such an institution, and the objects which the legislature had in view, says, "and by discount rendering easy and expeditious the anticipation of funds." That kind of discount, therefore, which would enable a person to anticipate his funds, was a transaction which the legislature intended to authorize. In the body of the act, in section eighth, where certain powers are granted to the bank, it says, "and to receive for discounts made at the said bank, at a rate not exceeding six per cent. per annum." By allowing the bank to take six per cent. for discounts, when only five per cent. could be taken for interest on a loan, without taking notice of any repugnance between the two statutes, a strong presumption arises, that the legislature considered the discount by which funds could be anticipated, as a transaction very distinct from a simple loan of money. But this presumption does not rest alone upon the circumstance that the legislature did not notice a repugnance between the two statutes. The distinction between an anticipation of funds by discount, and a loan of money upon interest, exists in the nature of things. Suppose I ship a cargo of flour to a merchant in Boston, who in payment remits me a bill of exchange at sixty days sight, upon a merchant in Alexandria who accepts it. I wish to anticipate this fund. I apply to the bank to discount it. Do I ask for a loan? Do I wish to borrow the money? No. I am entitled to receive a sum of money at the end of sixty days, but I wish to anticipate the receipt of it. I wish to receive it now instead of then. The bank discounts this bill. If it were a loan from the bank to me, I should be the principal debtor, and the first person liable to the bank; but in truth by indorsing the bill to the bank, I become only a collateral and conditional debtor. The acceptor is the principal debtor to the bank, and to him must they first apply for payment; if not paid, they must protest, and give notice to me of the non-payment as soon as possible under all the circumstances, and if they neglect to demand payment from the acceptor, or to give me due notice of his non-payment, they have no claim upon me. Can this then be a loan of money from the bank to me? Nothing can be more different. I am only liable as the indorser of a bill. If it were to be considered a loan at all, it should rather be a loan to the acceptor, the principal debtor in the transaction. But it is not a loan to any person; it is a mere accommodation in shortening the time of payment. It was said, in argument, that the transaction must be either a loan of money or a purchase of the note, and that it could not be a purchase, if the vendor guarantied the bill by indorsement, and that the bank was not authorized to trade in the purchase of bills, consequently it must be considered as a loan. This is clearly a petitio principii. It assumes the principle in dispute. There is a transaction which is neither a loan, nor a purchase of the note, and that transaction is discount. If it be not a loan, it cannot be the forbearance of a sum of money lent. If it be neither a loan nor the forbearance of a sum of money lent, it is not a transaction prohibited by the statute of usury.

A clear case, then, of mercantile discount, being the anticipation of funds, and not a loan of money, is not within that statute. Thus stands the case upon general principles of law and reason. Let us see how it stands upon authority. But here let me repel a suggestion that this court can set up the custom and usage of any trade or profession in England, or even in this country, in direct opposition to the express statutes of the land. We disclaim any such power, and we disclaim all discretion in deciding a point of mere law. It has been said that in considering this question, we ought not to regard English authorities—that we are competent to make and expound our own laws. It is true that English authorities, as such, are not binding on the courts in this country. But no prudent man, who is to decide a question, will shut his ears to reason or argument, from whatever part of the world it may come. Upon the present question, I hold it to be not only our right, but our duty, to look into the decisions which have taken place upon questions of usury in England, especially decisions made prior to the date of the statute of usury in Virginia; because that statute is copied almost, if not exactly, verbatim from the English statute; and it is fair to conclude that the Virginia legislature, when they adopted the words of the English statute, meant to use them in the sense in which they were used in England; and as they had been explained and settled by judicial decision in that country, I hold it also fair to conclude that when the legislature of Virginia were passing a law upon the subject of a banking institution, and used technical terms appropriate to the business of banking, they used them in the sense in which those terms were generally used among bankers, not only in this country, but in other parts of the world where that business is carried on. In order to ascertain in what sense such terms have been used, I deem it competent for the court to get information from the general history of a country, and especially from its judicial decisions. In this point of view then, the court feels itself bound to look into the English decisions, to see in what sense certain technical terms have been used in that country—and to see what cases have been considered as out of their statute of usury, from which ours is copied.

Let us then inquire whether a clear mercantile discount, being an anticipation of funds, and not a loan of money, is or is not usury under the English statute.

The first case which I find is that of Barnes v. Worledge, Noy, 41. This case was

under the statute of Elizabeth, allowing ten per cent. The agreement was to pay five pounds for the first six months, and five pounds for the second six months, and it was adjudged no usury. "But by Popham, if the party had retained five pounds of one hundred pounds at the time of the leave, or that that five pounds was to have been paid before the six months, that clearly had been usury."

Worley's Case, Moore, 644. Popham, Gawdy, and Yelverton held, that although the loan was for a year, yet it was no usury to take half the interest at the end of half a year. "But it is otherwise if one deducts the interest out of the principal at first."

Barnes v. Worlich, Cro. Jac. 26. Popham, Gawdy, and Williams, held the principal case no usury: But said "if he had agreed to take his money for the forbearance instantly when he lent it, that had made the assurance void; for then he had not lent the entire sum for one year, and the other had not had the use of his money according to the intention of the law. And Williams said he knew upon this difference it hath been so resolved of late time."

Yel. 30. In Yel. 30, it is said that the court was divided as to the principal case, two of the judges being of opinion that upon a loan for a year one half of the interest could not be received at the end of half a year—but he says, "if one hundred pounds be lent for a year, and the lender within two days following takes back ten pounds, this is usury."

So in Dalton's Case, Noy, 171, it was said by Popham, "If a man lend £100 for a year and to have ten pounds for the use of it; if the obligor pays the ten pounds, twenty days before it is due, that does not make the obligation void, because it was not corrupt. But if upon making the obligation, it had been agreed that the ten pounds should have been paid within the time, that should have been usury; because he had not the one hundred pounds for the whole year, when the ten pounds was to be paid within the year; and verdict was given accordingly."

In Massa v. Dauling, 2 Strange, 1243, a note for two hundred pounds having three months to run was taken upon advancing one hundred and ninety-seven pounds, five per cent. per annum, being the legal interest; and at the end of the third month another note was taken for three months more upon the advance of three pounds for the other three months. Lee, C. J., held it to be usury.

In Fisher v. Beasley, 1 Doug. 235, Grindall borrowed of Beasley £100, and gave bond payable in six months with lawful interest; but he paid down two guineas as premium. There was no doubt that this was usury, but the question was at what time the usury was complete, whether at the payment of the two guineas, or at the expiration of the six months. It was decided that the penalty was not incurred till the end of the six months when the interest was paid.

In the case of Lloyd v. Williams, 2 W. Bl. 792, DeGrey and Blackstone inclined to think, that if a man borrows £100 for three months, and immediately returns to the lender £6 5s. 0d. by way of interest by advance, the offence of taking more than legal interest is complete, and it is not to be considered as a loan of £93 15s. only. This opinion of DeGrey and Blackstone, was against that of Gould. Nares gave no opinion. There is in that case, a dictum of Judge Blackstone, "That interest may as lawfully be received beforehand for forbearing, as after the term is expired, for having forborne. And it shall not be reckoned, as merely a loan of the balance. Else, every banker in London who takes five per cent. for discounting bills, would be guilty of usury. For if upon discounting a £100 note at five per cent. he should be construed to lend only £95, then at the end of the time, he would receive five pounds interest for the loan of £95 principal; which is above the legal rate."

In Gibson v. Fristoe, 1 Call, 73, the court of appeals of Virginia, say, that if it be apparent to the court that the matter is usury, the jury need not find the agreement to be corruptly made; and that an agreement by which a man secures to himself directly or indirectly a higher premium than legal interest for the loan of money, is usury.

In Floyer v. Edwards, Cowp. 112, Lord Mansfield says, "It depends principally upon the contract being a loan, and the statute uses the words 'directly or indirectly'; therefore in all questions in whatever respect, repugnant to the statute, we must get at the nature and substance of the transaction; the view of the parties must be ascertained, to satisfy the court that there is a loan and borrowing; and that the substance was to borrow on the one part and to lend on the other; and where the real truth is a loan of money, the wit of man cannot find a shift to take it out of the statute. If the substance is a loan of money nothing will protect the taking more than five per cent.; and though the statute mentions only 'for loan of moneys, wares, merchandises, or other commodities,' yet any other contrivance, if the substance of it be a loan, will come under the word 'indirectly.'" Speaking of the practice of the particular trade, to take a half penny an ounce on certain goods if not paid for in a certain time, he says, "It is true the use of this practice will avail nothing, if meant as an evasion of the statute; for usage certainly will not protect usury; but it goes a great way to explain a transaction; and in this case is strong evidence to show that there was no intention to cover a loan of money. Upon a nice calculation it will be found that the practice of the bank in discounting bills exceeds the rate of five per cent., for they take interest upon the whole

sum for the whole time the bills run, but pay only part of the money, namely, by deducting the interest first; yet this is not usury."

These were all cases of loan, and not of mercantile discount. I can find no case in which it was ever made a question whether, in a clear mercantile discount, the taking in advance by way of discount the whole interest, upon the whole sum, for the whole time the bill has to run, was within the statute of usury. The cases which come nearest to that question, are those where the discount had been made in that manner, but the sum advanced was not all paid in cash, but partly in other bills having time to run, or in goods at a high price. The circumstance that although usury was pleaded in those cases, it was not attempted to support it upon the ground that the interest was calculated upon the face of the bill, and not on the sum actually advanced, is good ground to infer that the whole court and bar considered such a transaction alone, not to be usury. This inference is irresistible, when we reflect that as early as the year 1771, Judge Blackstone, uncontradicted by his brethren on the bench, in the case of Lloyd v. Williams, 2 W. Bl. 792, declared his opinion to be that bankers in discounting bills may lawfully receive the interest beforehand upon the whole amount of the bill; and when we find Lord Mansfield in the year 1774, in the case of Floyer v. Edwards, Cowp. 114, declaring from the bench, with the concurrence of the three other judges, that "the practice of the bank in discounting bills exceeds the rate of five per cent. for they take interest upon the whole sum for the whole time the bills run, but pay only part of the money, namely, by deducting the interest first; yet this is not usury."

The cases to which I alluded, as those in which the present ground for the allegation of usury existed, but was not relied upon, are, 1. Benson v. Parry, cited by Judge Buller in Auriol v. Thomas, 2 Term R. 52. The question there was whether country bankers could take more than five per cent. on inland bills payable at another place; and it was decided by the court of king's bench unanimously that they might. No question was made whether it was usury for them to take five per cent.

2. The case of Winch v. Fenn, cited by Buller in the same case; where the same question was decided; and no question made as to the five per cent. deducted.

3. The case of Auriol v. Thomas, 2 Term R. 52, in which the court says, "it is now clearly settled that the party is entitled to take not only £5 per cent. for legal interest, but also a reasonable sum for remitting and other incidental expenses." And Grose, J., says, "The line which has been taken is, that if the sum charged be not a color or a screen for usury, but is only fair and reasonable, it ought to be allowed."

4. The case of Hammett v. Yea, in the court of common pleas, 1 Bos. & P. 144, which was this: Haviland made his promissory note payable to Yea, the defendant, at four months after date, for £3,000, which Yea indorsed and returned to Haviland, who took it to the plaintiffs, who were bankers, to be discounted for the accommodation of Haviland, the maker of the note. The plaintiffs discounted it by deducting £50, being four months' interest on £3,000, and paying £2,950, the balance to Haviland, partly in a draft having thirty days to run, partly by crediting Haviland in account, and the residue in cash; and this mode of payment was directed by Haviland or his agent.

These facts were relied on in the plea of usury. But the judge (Eyre, C. J.,) at the trial, directed the jury that the charge of usury rested wholly on the plaintiffs having made no rebate of interest on the bill at thirty days which was paid to Haviland as cash, at the time of discounting the £3,000 note; and left it to the jury to say whether it was a pretence to evade the statute. The jury found a verdict for the plaintiff; and on motion for a new trial, Eyre, C. J., says, "whether more than five per cent. be intentionally taken upon any contract for forbearance is a question of fact for the consideration of the jury, and must always be collected from the whole of the transaction." Again he says, "what is this case in matter of fact? Haviland applies to have his bills discounted to which the banker agrees, and calculates the interest upon the time the bills have to run, as is usual." "Had the banker told down the money, or tendered banknotes, and had Haviland put them into his pocket, or swept them into his hat, and then said, but I want to send money to London, will you take part of my money back and give me bills? and the banker had accordingly done so and given these bills, I cannot see that there would have been any color for calling it an usurious transaction." He here admits that the mode of calculating the discount and deducting it from the principal, upon discounting a bill or note, is the usual practice, and there is no color of usury in it. Again he says, "If all consideration of a loan were out of the case, a banker may lawfully take as much money as he can get for his bills without the least regard to the time they have to run." And again, "whether more than five per cent. be intentionally taken for the loan and forbearance of money is a question of fact to be decided by the jury." "It is for them to say whether it is a device or a fair agreement on good consideration." Heath, J., was of the same opinion. He says, "This was a transaction which commenced in discount and loan, and terminated in remittance. The subsequent transaction of remittance was no part of the antecedent contract; the bargain for the discount was complete." He considers the discount and loan clearly as a lawful transac-

tion. Rooke, J., concurred. We find the whole court unanimous, not only that the original discount was lawful, but the subsequent payment in bills instead of cash.

5. The case of Maddock v. Hammett, 7 Term R. 184, which was decided in the king's bench about six months before the case of Hammett v. Yea. The facts relied upon to support the usury, were that Haviland made his note to Yea, for £1,000, at four months, who indorsed it. Haviland, the maker, took it to the defendants, Hammett and others, the bankers, to be discounted, who discounted it by paying

| | | |
|---|---|---|
| In cash...................... £183 | 6 | 8 |
| In bank-notes............... 300 | 0 | 0 |
| Draft on London, at 7 days | | |
|   sight ..................... 500 | 0 | 0 |
| | | |
| £983 | 6 | 8 |
| Retained for discount........ 16 | 13 | 4 |
| | | |
| £1,000 | 00 | 0 |

The only usury relied on "was stated to consist in calculating the draft of £500 as cash, when it had seven days to run, instead of deducting so much from the discount, as the draft had to run before it became payable." There the original discount of £16. 13s. 4d. was not contended to be usurious, although it was the interest of the whole £1,000 for the whole time the note had to run.

6. The case of Marsh v. Martindale, 3 Bos. & P. 154. The facts of this case upon the plea of usury, were these,—Wood, in consideration of £3,500 paid by Marsh, had granted him an annuity of £500 per annum, redeemable upon certain terms. Wood applied to Marsh to redeem. And it was agreed that Wood should draw a bill of exchange for £5,000 at three years, which Marsh should discount. The £5,000 bill was accordingly drawn and discounted by Marsh as follows:

| | | |
|---|---|---|
| Original purchase of annuity..£3,500 | 0 | 0 |
| Arrears of annuity due....... 333 | 6 | 8 |
| For redeeming without notice, | | |
|   according to original agree- | | |
|   ment...... ............…..... 250 | 0 | 0 |
| Cash paid to Wood.......... 116 | 13 | 4 |
| | | |
| £4,250 | 00 | 0 |
| 3 years' discount on £5,000, at | | |
|   5 per cent................ 750 | 00 | 0 |
| | | |
| £5,000 | 00 | 0 |

In this case it was contended and decided that the discount of a bill for three years was not a transaction in the usual course of business, and afforded a strong ground, in connection with the circumstance of the annuity and a bond given immediately after the discount of the bill, to presume that the whole transaction was a color for a loan and a cover for usury. And upon that ground the court set aside the verdict for the plaintiff, and ordered a nonsuit to be entered. The principle decided by this case, was not, that in ordinary cases of discount the banker has not the right to deduct interest upon the whole amount of the bill for the time it has to run, but that in extraordinary cases, where the time the bill has to run is unusually long, that circumstance with others may be evidence of a mere contract for a loan, and an evasion of the statute. The general principle is admitted by the counsel on both sides and by the court, that "it is lawful upon the discount of a bill of exchange to take interest upon the whole amount of the bill at the time when the money is advanced," but it was contended that this principle "must be confined to transactions upon bills in the ordinary course of trade." It was said that it "was too much to infer that because bills in the ordinary course of trade may lawfully be discounted in the manner above stated, a bill for any period of time may be discounted in the same manner." Lord Alvanley, C. J., in delivering the opinion of the court, says, "it certainly has been decided that such a transaction on a bill of exchange in the way of trade, for the accommodation of the party desirous of raising money, is not usurious, though more than five per cent. be taken." "If therefore nothing more has been done in this case than has always been done by way of accommodation among merchants, the transaction was not usurious." But he thinks that the discount of such a bill, (for three years) even not coupled with the transaction respecting the annuity, would have been almost sufficient to have afforded a presumption of usury; but coupled with the affair of the annuity and the bond, he thinks it appears to be a mere cloak for an usurious loan. He admits it to be completely established that, on the discount of bills, a banker may deduct more than the legal interest upon the whole sum for the whole time if the excess be only a reasonable compensation for the expenses and trouble of remittance. He concludes by saying that the only question in such cases is, "whether it be a real discount in the way of trade, or a mere loan of money." In the case then before him he is clear that "it was not a discount in the way of trade, but was merely employed as the means of obtaining more than legal interest."

7. In the case of Parr v. Eliason, 1 East, 92, a bill which had thirteen months to run was discounted. The bankers took the full discount, but gave their own acceptance at three months for part, without deducting from the discount the interest for three months upon their own acceptance. This was holden to be usurious, because they did not pay the amount in cash, but gave their own acceptance at a distant day for part; it was not contended to be usurious, because the bankers deducted the interest upon the whole sum in the bill for the whole time it had to run, and no question of usury would

have arisen if the amount had been paid wholly in cash.

8. The case of Barclay v. Walmsley, 4 East, 55, where the acceptor of a bill discounted his own acceptance at eighteen days, deducting at about the rate of sixty per cent. per annum. This was not usury.

These cases satisfy my mind that in England a case of mercantile discount, by way of anticipation of funds, is not a case of loan within their statute; and they are a strong confirmation of the general principles of law and reason which I have before mentioned. Principles in themselves so strong, and so universally adopted as not to have been once questioned in a nation so commercial as that of England, are not to be easily shaken. In a country adopting the same law of usury, and the same principles of commercial law, the same principles of law and reason must equally apply. If then in this country as well as in England, a case of mercantile discount, by way of anticipation of funds, be not within the statute of usury, the question arises, is the case at bar a case of mercantile discount by way of anticipation of funds within the meaning of the charter of the bank? It would be difficult in practice for a bank to know whether a note or a bill offered for discount be a note or bill grounded upon a bona fide mercantile negotiation of sale or contract. If the right of the bank to recover upon a bill or note discounted were to depend upon their being able to prove at the trial that the bill or note was given for a real debt, they would have a very hopeless business. They would be liable to continual impositions, and even although the paper might have been founded upon a real transaction, the parties might so conceal or remove the evidence as to render it impossible for the bank to succeed. Again, if the bank was obliged to investigate nicely every transaction before they could safely discount a note or bill, it would be almost impossible for them to transact any business at all. The burden of proof must in reason rest upon the other party. It is sufficient for the bank that the paper offered bears the form and appearance of a mere mercantile negotiation. Nor do I deem it necessary within the spirit of the charter of the bank that a note to be lawfully discounted by the bank should be a note given in consequence of an actual sale of property. If one merchant chooses to give a credit to another, (whether gratuitously, or in consideration of a commission or other compensation,) by accepting bills, or drawing or indorsing notes payable at a distant day; such credit may strictly, in mercantile language, be called funds; and the discount of such acceptances, or such notes, is, as much the anticipation of funds, as if the acceptances or notes were founded upon an actual sale of property. Again, if I have sold property, either verbally or by covenant under seal, the contract is not in such a form

as to be the subject of discount. I get a friend who has confidence in that fund to accept my bills, or to indorse my notes, so as to enable me to anticipate that fund. Such acceptances and such notes would be clearly within the spirit of the charter of the bank, and would be fairly within the meaning of a mercantile discount by way of anticipation of funds, and the discount of such acceptances, or notes, could not be considered as a loan from the bank to me. If it can in any way be considered as a loan, it must be a loan from my friend who enables me to get the money on his acceptances.

What then is the case presented to us by the replication? Does it bear the form and appearance of a mercantile negotiation, by way of anticipation of funds? It is simply a note for eight hundred dollars by R. B. J., and indorsed by W. Herbert, payable at sixty days after date. The note in every respect has the usual appearances of a fair transaction, and there is no fact stated to show that it was not. The bank then had a right to presume it was so, and the court must so consider it until the contrary appears. Considering it then as a case of mercantile discount by way of anticipation of funds, I deem it a case clear of the statute of usury, and within the charter of the bank.

But an objection is made and strenuously insisted upon by the counsel of the defendant, that even if the bank has a right to deduct a discount at the rate of six per cent. per annum, upon the face of the note for the whole time it has to run, yet they have agreed by this note to take more than at that rate.

It is said that $8.40 upon $800 is at the rate of six per cent. per annum for sixty-three days and six tenths of a day, and they make it out by saying that sixty-three days is not two months and one tenth of a month, but is sixty-three three hundred and sixty-fifths of a year, that is, they do not allow that a month is to be considered as the twelfth part of a year, nor a day the thirtieth part of a month. The replication avers that $8.40 for the discount of a note of 800 dollars is at the rate of 6 per cent. per annum, and whether it be or not I take to be a matter of fact for the jury, and not for the court. It is for the jury to say what is the usual mode of calculation in such cases, and to calculate accordingly. If, however, it were a matter of law, and not a matter of fact, I should most certainly calculate it according to the mode in which the clerks in the bank calculated it, because I know that to be the general, I may almost say the universal, mode of calculation, not only among bankers and merchants, but in our courts of justice. But if it were an error, I should leave it to the jury to say whether it were not a mistake; and not done with an intent to make more than the lawful discount.

Upon these grounds, I am satisfied that the

transaction in the replication is not usurious, nor the note void. Judgment upon the demurrer for the plaintiff.